IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SHEENA COLEMAN**                                                                                            **PLAINTIFF**

v.                                            Case No. 4:21-cv-00571 KGB

**JAMES PEARSON, individually
and in his official capacity**                                                                           **DEFENDANT**

## OPINION AND ORDER

Before the Court are defendant James Pearson's ("Officer Pearson") motion for summary judgment and plaintiff Sheena Coleman's motion for order (Dkt. Nos. 20; 66). Plaintiff Sheena Coleman did not respond to the motion for summary judgment, and the time to do so has passed (*See* Dkt. Nos. 23; 24).[1] Ms. Coleman brings this action against Officer Pearson individually and in his official capacity as an officer for the City of England's Police Department for alleged violations of the Fourth Amendment to the United States Constitution, U.S. Const. amend. IV (Dkt. No. 2, ¶ 13). Officer Pearson moves for summary judgment on all of Ms. Coleman's claims against him (Dkt. No. 20). For the following reasons, the Court grants Officer Pearson's motion for summary judgment (*Id.*) and denies Ms. Coleman's motion for order (Dkt. No. 66).

   I.     **Motion For Summary Judgment**

          A.     **Factual Background**

In compliance with Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, Officer Pearson filed a statement of undisputed facts along with his motion for summary judgment (Dkt. No. 22). Pursuant to Rule 56.1, all material

---

[1] On July 8, 2022, the Court granted Ms. Coleman's motion to extend time to respond to Officer Pearson's motion for summary judgment and extended the deadline for Ms. Coleman to respond to the motion for summary judgment to July 22, 2022 (Dkt. No. 24). Ms. Coleman did not respond to the motion for summary judgment.

facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party. Further, failure to support or address properly the moving party's assertion of fact can result in the fact being considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Because Ms. Coleman has not responded to Officer Pearson's statement of undisputed facts, Officer Pearson's statement of undisputed facts is deemed admitted by the Court. Therefore, the Court incorporates Officer Pearson's statement of undisputed facts as its findings in this case (Dkt. No. 22).

### B.   Legal Standard

"Summary judgment is appropriate if there is no genuine issue of material fact for trial." *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (citing *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307,1310 (8th Cir. 1993); *Bersch v. Rgnonti & Assocs., Inc.*, 584 N.W.2d 783, 788 (Minn. Ct. App. 1998)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual

dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citing *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

    **C.**  **Analysis**

Ms. Coleman brings two claims against Officer Pearson. First, Ms. Coleman alleges that Officer Pearson "had no legal right to seize the dogs in question[]; but [Ms. Coleman] had a clearly established right to procedural post deprivation due process." (Dkt. No. 2, ¶ 7). The Court construes Ms. Coleman to allege a Fourteenth Amendment Due Process claim. Second, Ms. Coleman alleges that Officer Pearson "seized the dog(s) without a [w]arrant in accordance with City policy and customs" (*Id.*, ¶ 11). The Court construes Ms. Coleman to allege a Fourth Amendment claim.

    **1.**  **Fourth Amendment Claim**

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A valid arrest warrant does, however, give police officers authority to enter the place where a suspect lives in order to execute the warrant." *United States v. Davis*, 288 F.3d 359, 362 (8th Cir. 2002) (citing *United States v. Risse*, 83 F.3d 212, 215 (8th Cir. 1996)).

Here, Ms. Coleman does not appear to challenge her arrest, but rather, Ms. Coleman claims that Officer Pearson "seized the dog(s) without a [w]arrant in accordance with City policy and customs." (Dkt. No. 2, ¶ 11). Officer Pearson had a valid arrest warrant, so his arrest of Ms. Coleman was constitutionally valid (*See* Dkt. No. 20-3, ¶¶ 8–15). Moreover, Officer Pearson initially went to Ms. Coleman's residence in response to a call "about dogs being chained with no food or water" at Ms. Coleman's residence (Dkt. No. 20-1, at 2; *see also* Dkt. No. 20-3, ¶ 5). Arkansas law prohibits, and criminalizes, the starving of animals. Ark. Code Ann. §§ 5-62-102(21)(B), 104. After Officer Pearson arrested Ms. Coleman pursuant to the arrest warrant, Ms. Coleman's dogs were taken by the City of England (Dkt. No. 2, ¶ 13). A warrant was not needed for Ms. Coleman's dogs to be seized after Officer Pearson went to the home to investigate reported animal abuse and arrested Ms. Coleman pursuant to an unrelated arrest warrant. Therefore, on the record before it, the Court finds that Ms. Coleman's Fourth Amendment rights were not violated when her dogs were seized by the City of England after Ms. Coleman's arrest. The Court grants summary judgment to Officer Pearson on Ms. Coleman's Fourth Amendment claim.

### 2.  Fourteenth Amendment Claim

The Fourteenth Amendment's Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Procedural due process imposes constraints on governmental decisions which deprive

4

individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances, but instead is flexible and calls for such procedural protections as the particular situation demands." *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Mathews*, 424 U.S. at 334). Therefore, to determine what process is owed and what process is due for a state to deprive an individual of their property without violating the Fourteenth Amendment, courts balance the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Here, the Court construes Ms. Coleman to challenge both the pre- and post-deprivation of her property (*See* Dkt No. 2, ¶¶ 12–13). As an initial matter, the Eighth Circuit has held that "'[w]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well.'" *PPS, Inc. v. Faulkner Cnty.*, 630 F.3d 1098, 1107 (8th Cir. 2011) (quoting *Sanders v. City of San Diego*, 93 F.3d 1423, 1429 (9th Cir. 1996)). Because the Court finds that Ms. Coleman's dogs were seized by the City of England after the City of England responded to a call about potential animal cruelty at Ms. Coleman's residence and after the subsequent arrest of Ms. Coleman due to a valid arrest warrant, Ms. Coleman's pre-deprivation procedural due process challenge is subsumed into her Fourth Amendment claim. Therefore, Ms. Coleman's pre-deprivation procedural due process challenge fails.

5

The Court next considers Ms. Coleman's post-deprivation procedural due process challenge. At the first step of the *Mathews* analysis, courts consider the private interest to be affected. *Mathews*, 424 U.S. at 335. "Property interests 'are created *and their dimensions are defined* by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Lunon v. Botsford*, 946 F.3d 425, 429 (8th Cir. 2019) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, (1972) (emphasis in original)). Longstanding Supreme Court precedent has recognized that, "[e]ven if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." *Sentell v. New Orleans & C.R. Co.*, 166 U.S. 698, 704, (1897); *see also Nicchia v. People of State of New York*, 254 U.S. 228, 230–31 (1920) ("property in dogs . . . may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right."). Relying on this unquestioned precedent, the Eighth Circuit looks to Arkansas law when analyzing due process issues like those presented here. *See Lunon*, 946 F.3d at 430 ("We conclude that longstanding Arkansas law is highly relevant, indeed arguably controlling on the due process issue in this case."). Arkansas's prohibition on animal cruelty, including starving animals, is codified at Arkansas Code Annotated §§ 5-62-102(21)(B), 104, reflecting the state's use of its police power to regulate animal ownership.

Having established that there is a property interest in dog ownership, even if it is restricted to some extent by regulation, the Court next considers whether Ms. Coleman's alleged deprivation of that property interest violated the Fourteenth Amendment. *See Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 930 (8th Cir. 2016) (internal citations and quotation marks omitted) ("Only if we

find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process . . . . Absent a protected interest, a procedural due process challenge must fail."). A "post-deprivation process may suffice, even when the deprivation occurs pursuant to established state policy." *Id.* at 928 (citing *Walters*, 660 F.3d at 313–14). "[T]he Court has found post-deprivation procedures sufficient when the Government seeks to ensure that property subject to valid forfeiture will not be 'removed to another jurisdiction, destroyed, or concealed.'" *Id.* at 929 (quoting *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, (1974)); *see also McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regul. of Fla.*, 496 U.S. 18, 50 (1990) (noting that a state's interest in sound fiscal planning "is sufficiently weighty to allow States to withhold pre[-]deprivation relief for allegedly unlawful tax assessments, providing post[-]deprivation relief only.").

Here, it is the City of England's policy to hold collected animals for a minimum of 10 days and no more than 30 days (Dkt. No. 22, ¶¶ 20–21). The City of England's policy also requires that the animal owner pay a fee $10.00 for each day that the surrendered animal was held before the animal is released back to the owner (*Id.*, ¶ 23). The state has a legitimate interest in protecting public health, safety, and welfare, which includes animal protection; thus, the City of England's decision to withhold pre-deprivation relief and offer post-deprivation relief is justified. Additionally, the City of England's "post[-]deprivation procedure would provide [Ms. Coleman] with all of the process [she] is due: an opportunity to contest the validity of the [seizure] and a 'clear and certain remedy' designed to render the opportunity meaningful by preventing any permanent unlawful deprivation of property." *See McKesson Corp.*, 496 U.S. at 40. To prevail on a due process claim, "a plaintiff must take advantage of the processes available to him, unless the processes are unavailable or patently inadequate." *Walters*, 660 F.3d at 313 (quoting *Walters*

7

*v. City of Hazelwood*, Case No. 4:09-CV-1473 CEJ, 2010 WL 4290105, at *4 (E.D. Mo. Oct. 22, 2010), *aff'd in part, rev'd in part sub nom. Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011)).  Here, Ms. Coleman was aware of the post-deprivation process provided by the City of England, and she declined to take advantage of such a process.  Ms. Coleman was present when the animals were surrendered to the City of England, and Ms. Coleman stated that she wished to keep only one dog (Dkt. No. 22, ¶¶ 18–19).  During the 30-day period in which the City of England held Ms. Coleman's dogs, Ms. Coleman did not attempt to collect them (*Id.*, ¶ 22).  For these reasons, the Court finds that the City of England's post-deprivation process provided Ms. Coleman with all the process she was due; however, Ms. Coleman did not take advantage of the process.  Therefore, on the record before it, the Court finds that there is not a triable issue of material fact as to Ms. Coleman's Fourteenth Amendment claim.  The Court grants Officer Pearson's motion for summary judgment with respect to Ms. Coleman's Fourteenth Amendment claim.

### 3.     Municipality Liability

Ms. Coleman sues Officer Pearson in his individual and official capacities (Dkt. No. 2, ¶ 1).  A suit against an individual in their official capacity is a suit against the municipality.  *Banks v. Slay*, 875 F.3d 876, 881 (8th Cir. 2017).  The Supreme Court has held that a municipal government cannot be held liable under § 1983 solely for the actions of its employees.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691–92 (1978).  Thus, for § 1983 liability to attach to a municipality, there must be an official municipal policy giving rise to the violation, and "absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City."  *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018) (citing *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017); *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 470 (8th Cir. 2010); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)).  For the reasons stated above, the Court finds that on the record before it, Ms. Coleman has failed to establish that her

constitutional rights were violated by Officer Pearson. However, even assuming *arguendo* that Ms. Coleman's constitutional rights were violated by Officer Pearson, for the following reasons, the Court finds that the City of England cannot be held liable.

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law." *Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022) (internal quotation marks omitted) (quoting *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998)).

> To show a custom or usage, the plaintiff must prove (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the governmental entity's custom.

*Id.* (internal quotation marks omitted).

A municipality's failure to train its employees can also be the basis for § 1983 liability when inadequacy of the training "amounts to deliberate indifference to the rights of persons with whom" the defendant-employee came into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391.

> A failure to train is actionable under § 1983 if, in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.

*Poemoceah v. Morton Cnty.*, 117 F.4th 1049, 1057–58 (8th Cir. 2024) (internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 390).

Here, Ms. Coleman fails to point to a policy or custom responsible for her alleged constitutional violations. Further, Ms. Coleman does not allege that the City's failure to train or supervise its employees gave rise to her alleged constitutional violations. For these reasons, the Court finds that, even if Officer Pearson were found to have violated Ms. Coleman's constitutional rights, the City of England could not be held liable.

## II.   Motion For Order

Also before the Court is Ms. Coleman's motion for order which the Court construes as a motion to appoint counsel (Dkt. No. 66).

Ms. Coleman represents that she would like to proceed *pro se* (*Id.*, at 1). Ms. Coleman further represents that due to health issues she is unable to work (*Id.*).[2] Ms. Coleman claims that she "has received a response from the United States Dept. of Justice to help seek legal counsel and requests that if the courts will allow someone to represent her if she is successful in obtaining counsel, due to Ms. Coleman not being able to afford one" (*Id.*, at 3). The Court twice appointed Ms. Coleman counsel in this matter, and the Court has twice allowed her appointed counsel to withdraw due to ethical concerns (Dkt. Nos. 34; 47; 51). Having carefully considered Ms. Coleman's motion and the status of this case, the Court does not find that Ms. Coleman has demonstrated good cause for the appointment of new counsel. Accordingly, the Court denies Ms. Coleman's motion for order to the extent that Ms. Coleman seeks the appointment of counsel (Dkt. No. 66).

---

[2] Ms. Coleman requests that "the [C]ourt take in to [*sic*] consideration she was in the Conway Behavioral Center the month of June," and Ms. Coleman asks that the Court allow her to submit the documentation (Dkt. No. 66, at 4). The Court received Ms. Coleman's medical records from the Conway Behavioral Center that Ms. Coleman mailed to the Court.

Ms. Coleman also requests that the Court "allow her to submit documentation from United States Postal Service Consumer Advocates due too [*sic*] constant tampering of her mother's residence at 811 Irvy Rd. England, AR 72046 (*Id.*, at 2). Ms. Coleman represents that this is where she resides and receives her mail; according to Ms. Coleman she has not resided at 310 Pleasant Drive Lonoke, AR 72086 in 24 years (*Id.*). The docket in this matter lists 811 Irvy Rd. England, AR 72046 as Ms. Coleman's address. Therefore, the Court declines to update Ms. Coleman's address on the docket to the extent that she seeks to do so.

Ms. Coleman also requests that the Court allow her to "provide documentation of phones being stolen and evidence erased." (*Id.*). To the extent that Ms. Coleman seeks to raise new claims related to mail tampering or evidence being stolen, Ms. Coleman may raise these claims in a new complaint should she choose to do so. To the extent Ms. Coleman seeks to present evidence related to the allegations in her current complaint, the time to do so has passed; the Court will not permit Ms. Coleman to present evidence now related to her current complaint. Therefore, the Court denies Ms. Coleman's motion for order (Dkt. No. 66).

### III. Conclusion

For these reasons, the Court grants Officer Pearson's motion for summary judgment (Dkt. No. 20) and denies Ms. Coleman's motion for order (Dkt. No. 66). After construing the underlying facts and the inferences to be drawn from them in the light most favorable to the non-moving party Ms. Coleman, the Court concludes that Ms. Coleman has failed to present evidence from which a jury might return a verdict in her favor on her Fourth and Fourteenth Amendment claims. Ms. Coleman's pending motion is denied as moot (Dkt. No. 13).

It is so ordered this 5th day of September, 2025.

_____
Kristine G. Baker
Chief United States District Judge